## Florence Nolte, Appellee, v. Alvina Nolte et al., Appellants.

1. HUSBAND AND WIFE, § 280*—*when evidence sufficient to justify verdict for plaintiff in action for alienation of husband's affections.* Where the evidence in an action by a wife against her husband's parents and brothers for the alienation of his affections, where the evidence shows that plaintiff had lived in happiness and harmony with her husband until their interference, the evidence justifies a verdict for plaintiff.

2. APPEAL AND ERROR, § 1466*—*when admission of improper evidence elicited by cross-examination not reversible error.* Even though there is a question as to the admissibility of evidence to corroborate a witness as to answers elicited on cross-examination, where the evidence is not harmful, its admission is not reversible error.

3. HUSBAND AND WIFE, § 280*—*when evidence admissible in action for alienation of husband's affections.* In an action by a wife against her husband's father, mother and brothers for alienation of her husband's affections, a notice, caused to be published by one of such brothers while the husband was ill, that the husband would not be responsible for the wife's debts and purporting to be signed by the husband is admissible to show such brother's connection with the matter at issue, and the credit to be given to such brother's explanation of his actions as to the publication is for the jury.

4. APPEAL AND ERROR, § 1526*—*when inexactness in phrasing definition not reversible error.* Even though an instruction defining malice given for plaintiff does not employ exact legal technical terms, where it is the same as one given in another case affirmed in the Appellate and Supreme Courts, and plaintiff's evidence, if true, clearly establishes malice, the giving of the instruction is not reversible error.

5. INSTRUCTIONS, § 81*—*when refusal to single out fact not error.* It is not error to refuse an instruction which singles out one of numerous facts and ignores the rest.

SCHOLFIELD, J., took no part in the consideration of this case.

Appeal from the Circuit Court of Coles county; the Hon. WILLIAM B. SCHOLFIELD, Judge, presiding. Heard in this court at the April term, 1914. Affirmed. Opinion filed October 16, 1914. *Certiorari* denied by Supreme Court (making opinion final).

VAUSE & HUGHES, for appellants.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

James W. & Edward C. Craig and Donald B. Craig, for appellee.

Mr. Justice Eldredge delivered the opinion of the court.

Florence Nolte, appellee, sued appellants, Alvina Nolte, Clarence Nolte, Arthur Nolte and also August Nolte, in an action on the case for damages for the alienation of the affections of her husband, Elmo Nolte. The jury found the appellants, Alvina, Clarence and Arthur Nolte, guilty and assessed appellee's damages at the sum of $2,000. Judgment was rendered on the verdict. August Nolte was found not guilty. We deem it unnecessary to repeat the details of the pathetic story presented by the record in this case, the main facts only will be noticed here. Appellee, a young girl, in 1911 was teaching school in the country in Humbolt township near the city of Mattoon, Illinois, and about three-quarters of a mile from the home of August Nolte, who was a farmer residing in said township. The family of August Nolte consisted of his wife, Alvina, and his sons, Clarence, Arthur and Elmo. On September 30, 1911, appellee and Elmo were married. She continued to teach school until February 1, 1912. On the twelfth of February appellee and her husband moved onto a forty-acre farm rented from one C. F. Behrend, located between one-half and three-quarters of a mile from the home of August Nolte. The money appellee had earned teaching school was spent in buying furnishings for their new home. Clarence Nolte owned forty acres adjoining the farm they had rented, and Clarence and Elmo helped each other in the farming of their respective farms. The evidence shows, and it is wholly undisputed, that the young couple lived most happily together until after a baby was born, which occurred on January 6, 1913. In fact, the record shows that there never was at any time any discord of any kind between

appellee and her husband.   There is no contention
but that at all times appellee was hard working, duti-
ful and affectionate and the same may be said of her
husband, Elmo Nolte.   When the baby was born Elmo
was delighted and very happy over the event.   Appel-
lee was very sick at this time and continued ill for
about six weeks after the birth of the child.   About
a week after the birth of the child, Elmo was taken
sick and his mother, Alvina Nolte, spent most of her
time at Elmo's home taking care of him, with the re-
sult that Elmo was taken to the home of his father,
August Nolte, as the evidence tends to show, through
the procurement of his mother, Alvina, and his brother,
Clarence.   The incidents surrounding the removal of
Elmo from his own home to that of his father it is
unnecessary to repeat.   The evidence clearly tends to
show that through the efforts of the mother, Alvina,
and the brothers, Clarence and Arthur, Elmo was per-
suaded and prevented from again returning to his
wife and child, except for a short time hereinafter
mentioned, and the jury were warranted in finding
their verdict for appellee upon this issue.   The evi-
dence tended to show that the father, August Nolte,
took no part in the matter and expressed his regret
therefor, and the jury found him not guilty.

Appellee was left on this farm in the middle of
winter, with a child barely two weeks old, in ill health,
with no means of support, and, as the evidence tends
to show, with insufficient provisions in the house, and
on the advice of her physician went to the home of her
mother at Mattoon with her baby.   She left every-
thing in the house as it was, and took only her clothes
with her.   Complaint is made of the admission in evi-
dence on behalf of appellee of a certain notice.   As
above mentioned, when appellee left her home in the
country to go to her mother's house at Mattoon, she
left everything in and about the premises as they
were, with the exception of her own clothing.   There
was an apparent contention made by appellants on the

trial that appellee abandoned her home and that she had refused to live with her husband. The evidence tended to show that after appellee had been at her mother's house for some time, through her efforts and those of her counsel, her husband, Elmo, agreed to go back and live with her and went back to her at her mother's house and they were again apparently perfectly happy. They went to Behrend and asked him if they could have the farm for another year, and, upon being told that they could, they were making preparations to return and live thereon. Barely two days elapsed before Arthur Nolte came to the house of appellee's mother in Mattoon, where Elmo and his wife were staying, and had a private whispered conversation with Elmo which resulted in Elmo again leaving appellee, since which time he has never returned. On cross-examination of appellee she was asked if Elmo did not offer to take her out home and live with her at that time, to which she replied that they had agreed that they would go. Then the following questions were asked her:

"Q. Now, when the time came to go, you wouldn't go, would you?

A. The time never came, Arthur came before that.

Q. But you had refused to go with him?

A. I had never refused to go with him.

Q. Now, after that meeting down there at the house you afterward sent out there and got all the furniture and hauled it in to town?

A. After the notice was served on me I did.

Q. What notice?

A. Mr. Behrend served a notice on me.

Q. Mr. Behrend served some kind of a notice and you went out there and got all the furniture and moved them into town?

A. Yes, sir."

On redirect examination the notice was offered in evidence. The notice was dated March 11, 1913, addressed to appellee, signed by C. F. Behrend, notifying her to remove all her personal property from the

said dwelling house and that he would not be responsible in any manner for any possible damage that might occur to said property while located on said premises. Pursuant to this notice appellee removed the household furnishings to her mother's home. The plain inference this cross-examination sought to convey was, that appellee had refused to go out to her husband's home on the farm and had taken all the furniture and personal possessions therein to her mother's home at Mattoon and had abandoned her former home. The subject of the notice was necessarily brought out in response to questions propounded by counsel for appellants, and we think the notice itself was competent in corroboration of the truth of her answers given on her cross-examination. However, if it was error, it was not of such a harmful nature as should cause a reversal of the judgment.

The admission in evidence of certain newspaper notices is also complained of. Within two days after Elmo Nolte had been taken from his own home to that of his father, and at a time when, Arthur Nolte testified, he was very seriously ill and his life was despaired of, Arthur Nolte caused to be published in the newspapers at Mattoon the following notice:

"NOTICE. I will not be responsible for any debts contracted by my wife, Florence Nolte.

ELMO NOLTE."

There was no error in the admission of this in evidence. It tended to show Arthur Nolte's connection with the matter at issue. The credit to be given to his explanation of his actions in regard to the publication of these notices was for the jury to determine.

Complaint is made of the giving of the third instruction for appellee on the ground that it does not contain the proper definition of "malice." It seems to be conceded that this instruction was given in a case which was affirmed by the Appellate and Supreme Courts. We think that the criticism of the instruction is hypercritical, and even if it does not set out the

definition of "malice" in exact legal technical terms, if the evidence offered on behalf of appellee is true, it clearly shows malice.

It is urged that the court erred in refusing appellant's second instruction which, in substance, instructed the jury that if they believed from the. evidence that the defendant took Elmo Nolte home and cared for him while he was sick and not for the purpose of alienating his affections from appellee, that they should find defendant not guilty. This instruction was clearly erroneous, as the taking of Elmo to his father's home was only one of numerous facts and circumstances which tended to prove appellee's cause of action. .

There is no substantial error in the record and the judgment will be affirmed.

*Affirmed.*

Mr. Justice Scholfield took no part in the consideration of this case.